Good morning, Your Honors. May it please the Court. The first issue, it appears, would be jurisdiction. The government contends that there is no jurisdiction on the NACAR review issue and proposes that we are asking this Court to go into the facts of the adjudication, and we are not. As far as jurisdiction, specifically on the points raised by the government yesterday, Fernandez v. Gonzalez, a 2006 case out of this Court, indicates that this Court has jurisdiction to review any denial of a motion to reopen by the Board where it deals with the procedural issues of a statute, regulation, or a rule. Recently, another case that went through this Court, Christopher v. Smith Klein, stands for the principle that no compliance or deference is to be afforded to the agency if they are trying to get compliance before a clarification of the ruling question is made. Another case out of this Court, a recent case, Lopez Rodriguez v. Holder, reversed the – sent the case back to the Board for having violated ACFR 1003.1d, Roman I and Roman IV, for, one, engaging in a de novo factual inquiry into the facts of the case, and for substituting its own facts for the facts of the case. This Court has jurisdiction to review any denial of a motion to reopen by the Board where it deals with the procedural issues of a statute, regulation, or a rule. This Court has jurisdiction to review any denial of a motion to reopen by the Board where it deals with the facts of the case, Roman I and Roman IV, for, one, engaging in a de novo factual inquiry into the facts of the case, and for substituting its own facts for the facts of the case.  This Court has jurisdiction to review any denial of a motion to reopen by the Board where it deals with the facts of the case, regulation, or a rule. Well, I think what you have to address, I think, very directly, is why the case cited by the government in the 28-J letter doesn't control here. I mean, how do you distinguish this case? What's the difference between the issue in, how was it pronounced? Iscott? Between Iscott and this case. What's the difference? Well, the difference in this case, Your Honor, is that the Board specifically assumed responsibility in a case where it does not have jurisdiction. And given that they are violating their own rules and that they are engaging in factual  And given that they are finding a violation of ACFR 1003.1, that gives this Court jurisdiction to review divorce findings. Have you had an opportunity to look at the case that the government cited to us in the 28-J letter this week? Not in detail, Your Honor. At all. What distinguishes that case from this one? No, Your Honor. Okay. So those are the issues on jurisdiction. And more specifically, the NACADA ACFR regulations, specifically 1240.1, indicates that the IJ has jurisdiction to make factual determinations on NACARA cases. We argue on that point that the Board should have, as they were told by this Court in the case of Lopez Rodriguez, they should have sent the case back to the IJ for factual review instead of the Board engaging in a factual de novo adjudication. Now, on the substantive issue and the rest of the issues in this case, there is the question of cancellation or removal. There's the question of asylum. And there's the question of the applicability of Chali, the decision by this Court. In cancellation, the IJ found that there was exceptional and extremely unusual hardship, and outlined a substantial part of all the hardships that were enumerated and listed by her in her order and in the transcript, only to attempt to recant by engaging in speculation that maybe the family was not going to suffer that much through that exceptional and extremely unusual hardship. Now, the hardship gets to another question. What gives us the authority to review the discretionary decision as to the level of hardship? Not as to the level of hardship, Your Honor, but given that the judge was misstating the law and not taking into account the precedent law. What was the misstatement of law? Specifically, the judge make multiple references to the fact that the family could reunite themselves after they sold their house and got money out of their underwater mortgage.    I'm asking you to tell us the difference between a person who was in the United States and they were not able to visit each other. We're still waiting to hear some law in there. This is all factual. The Section 212, Your Honor, is the 10-year bar. It calls for a person that has been illegal in the United States for more than a year to remain outside of the United States for 10 years. And she not only ignored that, but reversed it by saying that they could visit each other. They cannot visit each other for 10 years. May not be able to visit each other in the United States, but they could visit each other outside the United States. That's not what the judge said. The judge said they could visit back and forth. So that was a misstatement of the law by herself. And in the transcript itself, she points out that she is restrained from addressing the hardship of the entire members of the family. And she is restrained from considering all the hardships in the aggregate. And that is contrary to holdings by the board and by the circuit court as well. That would be another violation of law on her adjudication of the cancellation or removal. Is there any case that says that the severe emotional difficulties that will be faced by a U.S. citizen child whose whole family is deported constitute exceptional, extremely unusual hardship? Is there a case out there that says that? Yes. Well, most of the cases that are being decided in favor of the alien go into the suffering, into the either emotional or medical hardship of the qualifying relatives. And in this case, the psychologist testified at length about the nightmares and depression that the child was suffering. And the court took that into account, but nonetheless said that that and the predicted family separation, which is also a big issue considered by this Court in Salgado, she decided to attempt to recant her finding of hardship, of sufficient hardship, by saying that they could sell their house at a profit, which, of course, was a very, very wrong assertion, and that they could visit each other, which, again, the law will forbid them from coming back for 10 years, given that the statute does not provide for any waivers for people that only have children or sons or daughters in the United States. In order to get the waiver, they would have to have parents or spouses, and both Mr. and Mrs. Ramos do not have parents and do not have spouses here in the United States who are legal. On the issue of asylum, the judge also found that there was past persecution, and only to attempt to recant, again, with speculations and conjectures, that things will change in the future. She... They'll change in the future or have already changed? Now, she said that they had already changed by the passage of time and by the peace treaty. What else has happened in Guatemala? The peace treaty. Yes. So it's not speculation about the future. It's an evaluation of the past. But the board and the circuit courts have consistently held that the passage of time by itself is not a sufficient basis. Stop. You just acknowledged it wasn't the passage of time by itself. The IJ made specific reference to the end of the Civil War. So it's not the passage of time. It's the end of the Civil War. The end of the Civil War, yes, Your Honor. But in this case, the Civil War did not affect, did not involve the client. He was neither an Army member nor a guerrilla member. So the peace treaty did not affect him. He was a student who publicly stood against military rule and was persecuted for that reason, along with his family. His brother, who worked for the mayor of the city, was killed. The mayor was killed. His brother had to flee to Costa Rica. Another nephew had to come to the United States and secured asylum in this country. And professors and students similarly situated to him were also killed. So it was not that the peace treaty was going to solve his problems. That was 1985? Yes, Your Honor. Twenty-five years ago. That is correct. And in this way, the Civil War has ended. Is there any evidence at all that suggests that conditions in Guatemala have not changed since 1985? Well, that is precisely the point, Your Honor. Once the judge has made a finding that there was past persecution, the law requires the government to come back and show proof that there will not be any future persecution. Well, not proof that there won't be, but proof there is no longer a well-founded basis for fear. Conditions have changed. Times have changed. Your client has been out of Guatemala for 25 years. What reason is there to suspect that? But as far as this case, Your Honor, it was only pure speculation because the government submitted zero evidence that there was not any possibility of future persecution. Okay, not one single document. They made reference to our timeline by the BBC, but they ignored that in that same timeline we pointed out that even after the peace treaty, bishops had been killed, the dictators that were in charge of the massacres during the Civil War were still in power, and they only mentioned that there was a peace treaty. The peace treaty has not taken care of the problems that Guatemala suffers. Women are still persecuted. Gangs are still rampant, and now drug cartels operate also freely throughout the country. So it's not as if the government could not have brought up some evidence on why they based their assertion that there's not a possibility of future persecution. On the question of Chali, the record shows that this case is parallel to that of Chali in the date of entry, the filing of the asylum, the granting of employment authorizations. The date of the second de novo interview by the asylum officer was days separating one case from the other. So given that the facts are virtually identical between this and the Chali case, the board should have given difference to this court and remanded the case for further review. Let me ask you, because you don't respond in your briefs to the fact that the asylum application was filed before October 1, 1991, and the court in Chali emphasized the fact that Chali's application could be considered, I guess it was a writing requesting NACARA benefits because the statute allowing individuals to obtain that relief had been passed. What is your response to that? Well, that date that you refer to, Your Honor, the October date, refers to the issuance of the regulations. And neither the 206 nor the 208 land law memos, nor Chali itself, considered the issuance of the regulations any landmark that would demarcate the ability to file or not file the application. It was not a material issue, the publication of the rules themselves. The only issues were the window of opportunity that was created originally, which was July to December of 1991. And the land laws memo specifically says that cases that were filed beyond those two months' window of opportunity were to be considered. So for those reasons, because of the mandate of this Court in Chali and the mandates of the land law memo to their own agency, the case should have been remanded for additional review. Can I save the balance of your time for rebuttal? Yes, Your Honor. We'll hear from the government. May it please the Court. My name is Elizabeth Kerlin, and I represent the United States Attorney General, who is the Respondent in this case. Your Honor, I'd like to address the ABC settlement agreement, because I believe it's an issue of the threshold question before this Court, is whether Petitioner expressed an intent to receive a benefit that didn't exist at the time that he took a particular action, which is a factual matter that the Court must resolve. He applied too early. I'm sorry? He applied too early? It's not a timeliness issue, Your Honor. It's an issue of his intent and whether at the time that he and whether the record of the remedy that he sought existed at the time that he took a particular action. And in this case, he submitted his asylum application on July 12, 1990, which predated the October 1, 1990 change in regulations, and therefore couldn't have been a request for benefits under the ABC settlement. That's what I mean, he applied too early, because Chali suggests that you don't have to have an explicit request for ABC benefits to have your filing be treated as an application. It's true at the time he filed, the benefits weren't there. If he'd filed six months later, presumably the benefits would have been there and his filing would have counted. Well, the way that we look at this, Your Honor, is that it's not a question of whether an application was premature or timely, because in those circumstances, like, for instance, a good example would be an untimely PFR. The person who applies out of time or too early knows that the benefit of judicial review exists. In this case, what happened, which is to do with the fact that he had a request to apply for a legal consequence or remedy. And the only question is whether or not the petitioner had an intent to apply. Now, you don't have to know the ABC benefit exists, because you don't have to make explicit requests for the benefit. The filing in Chali, as I recall, didn't make that request, and yet it was still treated that way. It's not whether you have knowledge of whether a particular benefit exists. It's whether you have an intent to apply for a legal consequence or remedy. And the only ---- Did Chali include a factual finding that the petitioner in that case had an intent to apply? Yes, that he expressed that intent, and that he expressed that intent by applying for asylum after, on January, in January 1991, after the regulations for which the ABC settlement, if you apply within a certain time frame, you get the benefit of an adjudication under the October 1st, 1990, regulations. Now, Chali in that case had ---- was applying. The Court found that he had expressed an intent to apply for that particular remedy, which is an adjudication under the October 1st, 1990, regulations. When he submitted his application on January, on January, in January 1991, that's distinguishable from the petitioner in this case, and that's why I say that it's not an issue of timeliness or a preexisting application. This is an issue of whether or not the petitioner had an intent to take advantage of a legal consequence or remedy that didn't even exist at the time that he took the action. So the only way that he could receive the remedy that he wants, because irregardless of his application for an asylum, the remedy that he wants is the benefit of the ABC settlement. I hear the distinction you're drawing, but I kind of come back to the same point. If he had submitted exactly the same paper three months later, I'm not sure how it would not have qualified for the same treatment that Chali provided for the petitioner in that case. Because the remedy exists. Oh, sure. The only way that ---- I understand that. But I come back to that question. If he had presented the same paper three months later, he would have qualified, it appears, for that remedy, which existed at that time. Yes. So, and that's why I describe it as filing prematurely. It really is a timing issue. There's not something in the substance of the paper that's filed that would have to have been different. It simply had to be filed at a time the benefit was available. And the reason why I want to turn it away from the timeliness issue, because my belief is that in order to give the petitioner the relief that he seeks, the remedy that he seeks, which is the benefit of the ABC settlement, when he ---- when it didn't even exist at the time that he applied, the court would have to, in order to be able to give him the remedy that he seeks, which is the benefit of the ABC settlement, when he ---- when it didn't even exist at the time that he applied, the court would have to find that the provisions of the settlement or the regulations themselves that were created in October 1, 1990 were retroactive in application. I don't want to interrupt this metaphysical argument between you and Judge Clifton, but I'm trying to understand ---- I've got a pin here. I'm dancing on the head of it here. I'm trying to understand something now. Yes, Your Honor. For instance, in terms of Shelley, as you read it, I guess, would it be possible for a putative ABC class member to express an intent, right, to get a benefit before the regulation was passed? No. Why not? Because that's exactly why that doesn't ---- Shelley doesn't even apply, because when Shelley applied, the remedy that the court wanted to give him existed. So when a remedy doesn't exist, the court can't construe an action to have a particular ---- that particular consequence. It's not a consequence. It's a matter of ---- you said it's a matter of intent. Yes. But the consequence is ---- and that the consequence is the same as the ---- the consequence is that you now can have the benefit of that adjudication under the October 1, 1990 regulations. Well, if the regulations don't exist, you can't take advantage of that. And the only exception that you can ---- under which you can do so is when a benefit, a law is passed or a statute is passed that says this will apply retroactively. Under those circumstances, yes, the person can say, okay, this is my, you know, what I ---- It's a matter of ---- it's not a matter of taking advantage. It's just a matter of expressing intent. Like, for instance, somebody today could say ---- Yes. You know, we'll say somebody in the, you know, the Dream Act, you know, who's going to school and then maybe all that, could say, boy, I'd sure like to, you know, be, you know, get the benefit of, we'll say, you know, permanent residency because I'm a student or a military, something like that. But there's no such law. But you can express an intent that if the law is ever passed, I'd like to have the benefit of it, can't you? Yes, you can, but ---- Isn't that an expression of intent? That is an expression of intent, but it can't be treated under the provisions of the settlement agreement or the regulation itself that gives you or the law itself that would eventually pass to give you that right. Challey's was. They don't provide for that. I mean, the decision recites. Challey submitted the application before the window opened on July 1st. Defendants concede that Plaintiff's premature writing was timely. There's been no concession from the government here, but I'm not sure I understand what the difference is. The difference is when Challey applied, the benefit that he was seeking existed. It existed on October 1st, 1990. So it would be like this. In a situation, let's say California doesn't have any sort of income tax law, that we don't have to file taxes. That's not fair because your example is distinctly different. This benefit is the resolution of a lawsuit. It's a resolution of claims that have been pending for some time. Now, they've effectuated a settlement that provides for a procedure to get the benefit, but it's not like it's some change in the law that has nothing to do with past history. The benefit under this, the benefit is not to be part of, it's to have an adjudication under the October 1st, 1990 regulations. The regulations that were only created after, Challey is different because Challey knew, or even if he didn't know that the benefit that he was seeking, I want an adjudication, asylum adjudication, under the 1990 regulations. I want that. Then he applied after that was created. I think Judge Tashima said it correctly when this is unlike, Challey is unlike this case, and this case is more like the situation where a person just submits an application for asylum and says, okay, I want this application to count for asylum, and then if a year down the line Congress passes some sort of law that allows for amnesty for people who entered without inspection, I'd like to take advantage of that, too. Well, the only way that Petitioner could ever have that remedy that he seeks, based on an action that occurred prior to the creation of the benefit, is if the law that's passed by Congress a year down the line says, this law applies retroactively to those individuals who did this, who submitted an application after. Ms. Garland, I guess I just want to understand you. So Mr. Ramos here, Escobar, what would he have needed to have done to be like Challey? He would have needed to have taken some affirmative action after the regulations were created, the benefit that he wants, which is after October of 1990. Would turning in the same paper three months later have done it? It would have done it, because it would have been in a writing that expressed an intent. Basically, my argument boils down to the idea that when a remedy doesn't exist, a court can't construe an action to have that legal consequence, to be allowed to take advantage of that benefit. No, but there are, just thinking out loud now, there are some situations in the law where you can sort of like, you know, ask for a benefit in an anticipatory way, even though the event that gives rise to it hasn't happened. Such as, for instance, in some situations, a premature notice of appeal is okay, even though it's filed before the final judgment. Right? Yes, but the only in those, but in those instances, the person knows about, like, it would be like an untimely PFR. The person knows that judicial review is available. They're just saying, I'm sorry, I just didn't do it out of time, or you should treat my application as being, but Challey does exist. And that's what he's doing here. He's saying, well, you know, treat it as if I filed it six months later. But it didn't exist. The remedy didn't exist. But it did six months later. Well, yeah, but he has to, but that's, again, that goes back to what I'm saying, which is the law has to be retroactive for that. There has to be some provision. But the law, or the regulation, I guess, really doesn't say, does it, whether it's retroactive or prospective. It is prospective, and it has only been applied for, in the general rule of construction. I know, but it doesn't say expressly, this is prospective only. So it's open to, isn't it open to construction in cases like this to say, well, isn't that one of the issues, and we have to decide, should it be applied retroactively in cases like Rommel's? Well, then the Court would be saying that there's a retroactive application when there has been no, there's no, the general rule of construction, when Congress passes a law, it passes, the general exception is that it's prospective only. We understand the general rule. The question is, is this an exception to that? And there are exceptions, right? There are only exceptions when the law itself or the provision provides for some retroactive application. Was this application pending at the time the regulation went into effect? It was pending, yes. But again. So you don't need any retroactive application if you apply the regulation to applications that are then pending? No, because then, no, Your Honor, that wouldn't, that isn't the, that isn't what happened in this case, and Chaley doesn't help support that either, because in Chaley, the Court was trying, was looking at whether the person expressed an intent. And if it's outside, and the Court found that if it's done after, the Court emphasized if it's done after the October 1st, 1990 regulations have taken effect, that was expressly in the Court's opinion. But before the time limit set in the, set out in the settlement agreement, then that can count under contract terms as an intent expressed. I just want to make sure I understand a lot of everything you said. Why the government conceded that Chaley's application was timely? Because he had submitted it after, in January 1991. Now, that's after the, that's after the regulations took effect. So that's after the regulations, the benefit that he wants was created. So it's there now. He can take advantage of that benefit. And it was after, even after the December 1990, when the settlement was entered into in ABC. But it was before the window for filing. It was before the window for filing. So they have that in common. They have that. No. They, the, what we're saying is. Ramos and Chaley have that in common. No. We're not, we're not saying that they have anything in common in terms of that. Their application is, was pending at the time, but the time that when we're looking at intent, which is what the Court and Chaley focused on, how they. I'm just going to ask you a very limited, narrow question, because I just want to know what your position is now that I've heard everything else that you said.  Didn't Ramos, Mr. Ramos, like the Petitioner and Chaley, apply for asylum before the window for filing for NACCAR benefits pursuant to ABC opened? Yes. He filed it before the window and even before the regulations were created, before any benefit, anything, legal consequences had occurred. So they did have that in common. But. But it was before any benefit. Well, the but is, the but is, but, and this is really Judge Kliff's question, the application was still pending when the regulation went into effect, right? The application was still pending, yes. Now, why can't it, why isn't it reasonable to construe the regulation as, you know, on its effective date as applying to all pending regulations, pending applications? Because then the Court would be saying that the regulation has a retroactive effect instead of a prospective. It's not retroactive to all applications then pending. It had to have a retroactive effect. Otherwise, you can't apply a legal remedy, which is the adjudication of your asylum application under regulations that didn't exist. No, no, no. But it's existing. Well, in other words, I think you can see that if Mr. Ramos came in the day the regulation became effective and said, I want to refile my application, it would not be retroactive, right? No. It would be. Well, then what's the difference in sitting there, hasn't been acted on, it's a pending application, to say it applies to all pending applications? Because you have to apply it in order, in his case, because he applied before it was even created, the regulation even went into effect. The only way that the Court could grant him the benefit that he seeks is to say that that regulation should be retroactive. It was created in 1990. So the only way that his – that you can have the benefit of having your asylum application adjudicated is if, okay, you submitted it like, you know, three months ahead, a year ahead, okay, we'll apply retroactively to your situation. If the Court – Your time has expired. I wanted to wait until your time has expired, because I have an observation to which I'll let you respond, but you're not obligated to respond. I've got to say, this is one of the cases we get occasionally that puzzled me enormously. I can't figure out why this person is being pursued. He came to this country after suffering past persecution, found to be credible by the IJ. If he'd applied promptly when he came in 1985, I guess it was, little doubt that he would have been eligible for asylum. Things have gotten better in Guatemala. Most of us, anyway, are grateful for that. And I think you've got powerful arguments as to why, at this point in time, he does not have a good claim for asylum. But in the meantime, we have somebody who apparently did qualify for NACARA benefits, failed to apply for them, apparently qualified for ABC benefits, may have applied too early for relief without knowing about ABC. I'm not going to try to get into the merits of that argument, and has lived in this country for 25 years with his wife, small business owner, taxpayer, no sign of any trouble. And the third petitioner is a woman who apparently came into the country as an infant, because I calculated she had to be less than one year old at the time. So this is the only country she knows. And her brother had the good fortune of being born here. He gets to stay. But the government, for some reason, has decided it wants to usher the rest of the family out of the country. And for the life of me, I can't figure out why. I understand discretion, prosecutorial discretion, is not unfettered. But the administration has, to its credit, tried to review cases. And I'm perplexed as to how it is this case winds up in our court today. Now, if you want to make any observations, you're invited to. What I've said is essentially extrajudicial. If there is any possibility that the court's mediation service would be of assistance in finding an accommodation in this case, we're happy to make it available. I just don't know why we're here. Well, my response to Your Honor would be that if Your Honor feels that mediation would be appropriate in this case, then I would be more than happy to go back to my client and discuss the possibility of prosecutorial discretion. The reason why I'm here today is because I believe that the board's decision is legally defensible. And that's your job, and you're supposed to represent your client. And we'll ask Petitioner's Counsel, but perhaps rather than submit the case today, we'll issue an order giving the parties two weeks to advise us as to whether mediation might be a way to see if an accommodation can be found to resolve the problem. Okay, Your Honor. Thank you. We'll hear from Petitioner's Counsel. Thank you. There appears to be a big confusion here about which approach to follow procedurally. Under criminal law, there is the question of ex post facto legislation. But immigration is civil law, and they routinely issue laws and regulations that apply retroactively. And this particular case goes beyond being criminal or civil. It's contract law. And each contract that has been entered in this case has been made to help somebody that was wronged in the past. So for the government to say that the ABC benefits should not apply to anybody that was wronged in the 1980s, it's just plain wrong. It renders the contract useless. But I think the government, in fairness, is correct that usually, at least, when an agency wants a regulation, it issues to apply retroactively. It says so expressly. Right? It's a usual practice. Yeah, that is true, Your Honor. But in this case, it was an agreement. It was a contractual agreement to assist people that had been wronged in the 1980s. And they did not do it quite properly in the 1990s. And this Court came in Charlie and said, you have been doing it wrong again in the 1990s. And that applied to people in the past, in the 1990s. And the government, the Board comes and says, no, we're not going to apply Charlie to anybody in the 1990s. We're not going to remand this case to the AO. We're just simply going to say that we are going to act ultra-vires and decide whether they qualify for NACARA or for ABC. And that is, again, totally wrong because it is the people in the past that were wronged that were trying to help with this legislation, with ABC, with NACARA, and with Charlie. What's your response to Judge Clifton's invitation to mediation? We would be amenable. But I have a serious concern in this case. The government points out in their brief that every delay in motions to reopen accrues to the benefit of the alien. And I submit, Your Honor, veering slightly away from the strict black-letter law, that spending well over 20 years every day not knowing whether the family is going to remain together or not, whether they're going to get a letter that says half of the family goes to Guatemala, to God knows what fate, and the child remains here in the United States, is not a pleasant way to spend 20 years. And by April 20th of next year, the child becomes a son, i.e., the consolation remedy is completely gone. That is not something that accrues to the benefit of the aliens. I think that they've suffered long enough. And if there's any way to put an end to this situation, I think that justice will be better served. Thank you. Thank both counsel for your helpful arguments. We will not submit this case today, but we'll shortly enter an order giving the parties time to consider the possibility of mediation through the Circuit Mediation Office. We thank you for your presentations today.
judges: Tashima, Clifton, Murguia